3UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CORITA YVONNE BURNETT ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 22-cv-1111-CSB |
| ) | |
| SEGAL, Warden of FCI PEKIN ) | |
| ) | |
| Respondent. ) | |

**ORDER**

**COLIN S. BRUCE, U.S. District Judge:**

Before the Court is Petitioner Corita Yvonne Burnett's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (#1). Petitioner, currently incarcerated at FCI Pekin, in Pekin, Illinois, argues that she is being denied due process because the Federal Bureau of Prisons (BOP) is not adjusting her projected release date despite her participation in certain programming. This matter is now before the Court for preliminary review of the § 2241 Petition pursuant to 28 U.S.C. § 2243 and Rule 1(b) and Rule 4 of the Rules Governing Section 2254 Proceedings for the United States District Courts. Rule 4 requires the Court to "promptly examine" the Petition and dismiss it if it "plainly appears . . . that the petitioner is not entitled to relief." As explained below, the Court finds that Petitioner's Petition (#1) must be SUMMARILY DISMISSED.

**DISCUSSION**

Petitioner's Petition is similar to many filed in the district in recent months asking the Court to adjust their projected release dates based on their participation in programming while the BOP. However, neither Petitioner, nor any of the other petitioners, has exhausted their claims with the BOP prior to bringing their claims to federal court. Habeas corpus petitions

under 28 U.S.C. § 2241 have no express exhaustion requirements, but "[a] common-law exhaustion rule applies." *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). Courts generally review a claim by a federal prisoner challenging their sentence computation by the BOP only after they exhaust the BOP's administrative remedy process. *Antonelli v. Gilkey*, 191 F.3d 455 (7th Cir. 1999) ("Though the text of § 2241 does not explicitly require exhaustion, we have determined that in order to be eligible for habeas relief, a federal prisoner generally must exhaust any available administrative remedies."); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) ("[W]e review a claim concerning the computation of a sentence only after administrative remedies have been exhausted."). The exhaustion requirement accomplishes two important policy objectives: protection of the agency's authority and promotion of judicial economy. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006).

The Court ordered Petitioner to show cause for her failure to exhaust. Petitioner argues in her response (#2) that the Court should waive the exhaustion requirement based on futility. Since exhaustion is not mandated by statute, "sound judicial discretion governs." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004), citing *McCarthy v. Madigan*, 503 U.S. 140, 148, 112 S. Ct. 1081, 1088 (1992). The general exhaustion rule may be excused when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez*, 355 F.3d at 1016 (citing *Iddir v. INS,* 301 F.3d 492, 498 (7th Cir. 2002)). In other cases related to the First Step Act, courts found that the petition was raising an issue of statutory interpretation that had been predetermined by the BOP so exhaustion of administrative remedies would be futile. *See, e.g., Kennedy-Robey v. FCI Pekin*, Case No. 20-cv-1371 (C.D. Ill.) Order,

d/e 9; *Goodman v. Ortiz*, No. CV 20-7582 (RMB), 2020 WL 5015613, at *2 (D.N.J. Aug. 25, 2020).

Petitioner claims that she is also just raising a statutory claim and that the BOP's decision has been predetermined or would otherwise be futile for her to raise in administrative remedies. She believes that the FSA clearly states that she should be awarded her FSA earned time credits immediately. It is true that the BOP has not applied FSA earned time credits to change every prisoner's projected release dates and that filing administrative remedies would not likely have changed the BOP's application of the statute. However, filing an administrative remedy request would have given Petitioner an opportunity to understand why her claim is premature without squandering judicial resources.

However, to fully explain why excusing exhaustion is not appropriate, the Court must explain why Petitioner's claim is so misguided (and, in doing so, lose the primary benefit of exhaustion of administrative remedies in cases like these). Petitioner's claim concerns the "risk and needs assessment system" that Section 101 of the First Step Act of 2018, Public Law 115-391 mandated that the BOP create. *See* 18 U.S.C. § 3632. The risk and needs assessment system ("System") was required to be developed by the BOP and be "used to . . . determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities" and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." 18 U.S.C. § 3632(a)(6)-(7). Under the System, prisoners earn time credits for participating in "evidence-based recidivism reduction programs" and "productive activities" as follows:

> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A).

However, these times credits are not applied in the same matter as good time credits under 18 U.S.C. § 3624(b). Unlike good conduct time earned under § 3624(b), which is applied to reduce a prisoner's total time in custody, time credits earned under the System for participating in programs and activities "shall be applied toward prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Prisoners are eligible for prerelease custody or supervised release when they meet the four requirements under 18 U.S.C. § 3624(g)(1). Once eligible, they may be placed in prerelease custody of either home confinement or a residential reentry center or placed on supervised release early. *See* 18 U.S.C. § 3624(g)(2).

The BOP's recently proposed and finalized regulations further clarify the FSA earned time credit system. *See* 28 C.F.R. 523.40-44 and 541 (final rule implementing the time credit system). These regulations clarify that an inmate is eligible for the application of FSA time credits only if he or she has:

> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;
>
> (2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and
>
> (3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

28 C.F.R. § 523.44(b)(1)-(3). The regulations also specify the criteria used by BOP when deciding whether to award the time credits to prerelease custody or through a transfer to supervised release. 28 C.F.R. § 523.44(c)-(d).

Petitioner's claim relies on the faulty belief that FSA earned time credits operate identically to traditional good time credits. However, while good time credits under 18 U.S.C. § 3624(b) are always applied to shorten a prisoner's time in custody, FSA earned time credits may be used *either* for prerelease custody *or* early supervised release. *See* 18 U.S.C. 3632(d)(4)(C). If they are applied to prerelease custody, then a prisoner's projected release date will not change because they are still technically in the "custody" of the BOP. *See, e.g., United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) ("An inmate in home confinement remains in custody of the Bureau."). Moreover, unlike good time credits, the BOP is not required (or able to) officially "award" the FSA earned time credits until the requirements under 18 U.S.C. § 3624(g) are met. These include that the inmate must (1) have demonstrated a recidivism risk reduction or maintained a minimum or low recidivism risk (or have received a determination by the warden subject that they met other requirements); and (2) have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A)-(B). Additionally, the BOP's regulations clarify that an inmate may only have their FSA earned time credits applied to transfer them to supervised release up to 12 months early, *see* 28 C.F.R. § 523.44(d)(3), making any remaining credits only eligible to be applied to prerelease custody and not impacting an inmate's official release date.

Petitioner still has nearly two years left in her sentence (her current projected release date is March 24, 2024, *see* BOP Inmate Locator https://www.bop.gov/inmateloc/ (last visited June 7, 2022)). Accordingly, Petitioner's request for the BOP to "apply" her earned time credits is premature. Moreover, these provisions make clear that earning FSA earned time credits is only *one* of the requirements for actually applying the FSA earned time credits and being placed in prerelease custody or early supervised release. For example, a prisoner who is suddenly assessed

as a medium or high risk to recidivate would not be eligible to use their earned time credits to obtain early supervised release under § 3632(g)(1)(D)(ii). In light of these requirements, it is clear that the "earned time credits" that Petitioner has accrued cannot be truly "applied" in advance because it is impossible to know whether Petitioner will meet the requirements for application. Moreover, because Petitioner's FSA earned time credits could be applied either to prerelease custody or early release to supervised release, her projected release date may be unaffected by applying her FSA earned time credits. The Court finds no authority that would allow the Court to order the BOP to preemptively determine how Petitioner's time credits will be applied.

      Of course, the BOP must necessarily track the FSA earned time credits a prisoner earns under the System and make a prerelease or supervised release plan as the potential date of applying the credits approaches. That way, when the requirements of § 3236(g)(1) are met, the credits can be immediately applied (as the statute would certainly appear to require). But, Petitioner has not claimed that the BOP is not tracking her credits (nor exhausted such a claim). Her potential date for applying her FSA earned time credits is still years away. Petitioner has identified no reason for the Court to think that the BOP will not apply her FSA earned time credits once (and if) they are eligible to be applied. Moreover, any claims she may have specific to the BOP's calculation of the amount of her FSA earned time credits must be exhausted prior to bringing it in a habeas petition.

      Petitioner's Petition also mentions her participation in the BOP's Residential Drug Abuse Program (RDAP) and complains that her release date has not been adjusted due to her participation in that program. While Petitioner has not also exhausted her administrative remedies on her RDAP claim, it is also plain from the record that she is not eligible for early

release based her RDAP participation. The BOP's regulations list early release as a potential incentive for RDAP participation. *See* 28 C.F.R. § 550.54. However, 28 C.F.R. § 550.55(b)(5)(ii) states that inmates are not eligible for early release if their current felony conviction is for "an offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives." *Id.; see also* 18 U.S.C. § 3621(e)(2)(B). Accordingly, Petitioner's current conviction for possessing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), makes her ineligible for early release based on her RDAP participation. *See United States v. Burnett,* 8:17-CR-374-004 (D. Nebr.), Judgment (#167).

**IT IS, THEREFORE, ORDERED:** The Court SUMMARILY DISMISSES Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (#1). This case is CLOSED. The Clerk is DIRECTED to prepare the judgment.

ENTERED on this 13th day of June 2022.

>   */s/ Colin S. Bruce*
>   Colin S. Bruce
>   U.S. District Judge